**PARK TOWERS LIMITED PARTNERSHIP,**
**Relator,**

v.

**COUNTY OF HENNEPIN, Respondent.**

**No. CX–92–741.**

Supreme Court of Minnesota.

April 9, 1993.

a three building, 141 unit apartment complex located in St. Louis Park. Park Towers Limited Partnership (hereinafter "Park Towers") executed a 20–year lease to Park Towers Cooperative Association (hereinafter "the Cooperative") on December 31, 1988. Bigos signed on behalf of the lessor and also on behalf of the lessee, as president of the Cooperative.

On January 2, 1989, Park Towers applied for homestead exemption status for 1989 under Minn.Stat. § 273.124, subd. 6 for those members of the Cooperative who occupied Park Towers' apartments. The Hennepin County tax assessor denied the exemption on April 26, 1989.

On July 25, 1989, Affordable Shelter Association (hereinafter "ASA") was incorporated as a third party nonprofit organization with Bigos as president. On October 30, 1989, the Cooperative assigned its interest in Park Towers to ASA and on December 30, 1989, the limited partnership agreement was amended to substitute ASA for the Cooperative as general partner, along with Bigos. Ted Bigos Investment Company was again designated as managing agent.

Throughout 1989, the Board of Directors of the Cooperative had discussions with the managing agent regarding rents, budgets, parking problems and carpet replacement. In late 1989, Park Towers submitted additional information to supplement the homestead application for 1989. The tax assessor again denied the exemption.

Park Towers filed a petition for review in the tax court contesting the assessor's denial of homestead status. Both parties moved for summary judgment. The tax court denied the motions. On January 11, 1991, it ruled that an October 1989 legislative amendment was retroactive to the January 2, 1989 assessment as provided by Act of September 27–29, 1989, 1st Special Session, ch. 1, art. 3, § 35, 1990 Minn.Laws 56.

The tax court tried the case on the issue of homestead classification from November 18–22, 1991. The tax court found that Park Towers failed to qualify for homestead classification under Minn.Stat.

Jerome S. Rice, Mark V. Steffenson, Rice & Heikes, Ltd., Minneapolis, for relator.

Michael O. Freeman, Hennepin County Atty., Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

**TOMLJANOVICH, Justice.**

This case arises from a decision in the Minnesota Tax Court which upheld the denial by the Hennepin County tax assessor of Park Tower's Limited Partnership application for homestead treatment status under Minn.Stat. § 273.124, subd. 6. We affirm.

Park Towers is a limited partnership consisting of Ted Bigos as both general and limited partner. This limited partnership owns the property concerned in this action,

§ 273.124, subd. 6, because of the lack of material participation by the tenants and the tenants' failure to qualify under the income guidelines of the statute.

Minn.Stat. § 273.124 was enacted during the first special session of the legislature in 1985, as a re-codification of Minn.Stat. § 273.133 (1984).[1] It provides special rules for homestead determination. Subdivision 6 provides for the extension of homestead treatment for multi-dwelling unit buildings owned by a nonprofit corporation or limited partnership and operated in conjunction with a cooperative association. In order to qualify for homestead treatment, a cooperative association must be organized according to chapter 308, Cooperative Associations. Further, a cooperative must be guaranteed certain rights by the building owner: the association must have a lease for at least 20 years; it must have a written agreement for rights to purchase the property if the owner chooses to sell; and, if a limited partnership owned the property, the cooperative association or a nonprofit organization must be included as the managing general partner. Minn.Stat. § 273.-124.

For purposes of this case, the next substantive amendment to Minn.Stat. § 273.-124, subd. 6 was in May 1989 when the legislature reinstated the low income guidelines to qualify for homestead treatment.[2]

[T]he cooperative must meet one of the following criteria with respect to the income of its members: (1) a minimum of 75 percent of members must have incomes at or less than 90 percent of area median income, (2) a minimum of 40 percent of members must have incomes at or less than 60 percent of area median income, or (3) a minimum of 20 percent of members must have incomes at or less than 50 percent of area median income. For purposes of this clause, "member income" shall mean the income of a member existing at the time the members acquires his or her cooperative membership, and "median income" shall mean the St. Paul–Minneapolis metropolitan area median income as determined by the United States Department of Housing and Urban Development.

Minn.Stat. § 273.124, subd. 6(d).

Finally, in October 1989, during the first Special Session, the legislature amended subd. 6 to require that the cooperative association "participate materially in the management of the property, including material participation in establishing budgets, setting rent levels, and hiring and supervising a management agent" and that "the limited partnership agreement must provide that the managing general partner have sufficient powers so that it materially participates in the management and control of the limited partnership." Minn.Stat. § 273.124, subd. 6(b) and (e).[3]

■ There is a presumption that all property is taxable, and the burden of proof is on the one seeking the exemption to establish entitlement to an exemption. *Camping and Educ. Found. v. State*, 282 Minn. 245, 250, 164 N.W.2d 369, 372 (1969).

I.

■ We must first decide whether the October 1989 amendment was to be retroactively applied to the 1989 tax assessment. Laws are not to be construed as retroactive unless clearly and manifestly so intended by the legislature. Minn.Stat. § 645.21 (1992). Further, we will not disturb the findings of the tax court if sufficient evidence exists for the tax court to have reasonably concluded that the relator failed in its burden to prove it was entitled to homestead treatment. *See, e.g., American Ass'n of Cereal Chemists v. County of Dakota*, 454 N.W.2d 912, 914 (Minn.1990).

---

1. Minn.Stat. § 273.133 was amended in 1987 to add income requirements to qualify for homestead treatment. Act of May 28, 1987, ch. 268, art. 5, § 5, 1987 Minn.Laws 1203–04.

2. The income guidelines were contained in Minn.Stat. § 273.133, subd. 3(d) (1987) but were left out during the re-codification.

3. The income requirements were also changed at this time so that 75 percent of the members must have incomes at or less than 80 percent of the area median income.

The October 1989 amendment revised a percentage rate in the income guidelines reinstated in May 1989. Act of 1989, 1st Special Sess., ch. 1, art. 3, § 10, 1990 Minn. Laws 36–38. The effective date for this change was specifically provided for.

> Section 10 is effective for taxes levied in 1989, payable in 1990 and thereafter * * *.

*Id.* at 56. Thus, on its face, the October 1989 income guidelines apply to taxes assessed in 1989.

Furthermore, although section 35 provides additional time to meet two specific requirements pertaining to board membership, subdivision 6(a), and nonprofit status, subdivision 6(e), it contains no provision for additional time to meet income requirements. Several other provisions of subdivision 6, in addition to the income percentage change in subdivision 6(d), were not granted the extension of time provided for to meet subdivisions 6(a) and (e), notably subdivisions 6(b), (f), (g) and (h).

If the legislature had intended to extend extra time to meet the income requirements under subdivision 6(d), it would have repealed the May amendment, which reinstated those requirements.

Thus the clear intent of the legislature was that the revised income requirements in the October amendment were to apply to taxes levied or assessed in 1989.[4] When the language of a statute is clear and unambiguous in its application to an existing situation, it shall not be disregarded. Minn.Stat. § 645.16 (1992). The tax court properly ruled that the October amendment applied.

## II.

■ To qualify for homestead treatment, a cooperative must meet several requirements.

> [T]he cooperative association must have a lease * * * which permits the cooperative association * * * to participate materially in the management of the property, including material participation in estab-

lishing budgets, setting rent levels, and hiring and supervising a management agent.

Minn.Stat. § 273.124, subd. 6(b).

> [I]f a limited partnership owns the property, it must include as the managing general partner a nonprofit organization * * * and the limited partnership agreement must provide that the managing general partner have sufficient powers so that it materially participates in the management and control of the limited partnership.

Minn.Stat. § 273.124, subd. 6(e).

■ It is clear that the cooperative association must play a more active and powerful role than that of a simple tenants group. The cooperative is to be materially involved in establishing budgets and setting rents. We believe that the statute makes it clear that the managing general partner must materially participate in management. The mere ability on paper to materially participate in management is not enough. Actual participation is required.

■ On March 9, 1989, the Department of Revenue directed the assessors to "carefully scrutinize" leasehold cooperative arrangements to determine if there was a bona fide management relationship with the owner of the property. We agree with the Department of Revenue that in order to qualify for homestead treatment, leasehold cooperative arrangements must be bona fide.

In this case, it is difficult to imagine a "bona fide management relationship" between the cooperative and the owner which would facilitate material participation by the cooperative: Mr. Bigos was the property owner, president of the board of directors of the cooperative, and the managing agent (through Ted Bigos Investment Company). Thus he was the lessor, lessee and the managing agent. This is not a bona fide cooperative relationship entitled to receive preferential tax treatment.

---

**4.** To levy means to assess, which is to ascertain or fix the value. *Black's Law Dictionary* 816 and 106 (5th ed. 1979).

The tax court correctly determined the requirement of actual material participation by the cooperative was not met and properly denied homestead treatment.

### III.

 In order to qualify for homestead treatment, leasehold cooperative members must meet certain income requirements at or less than stated percentages of the area median income. "Median income" is defined as "the St. Paul–Minneapolis metropolitan area median income as determined by the United States Department of Housing and Urban Development [HUD]." Minn.Stat. § 273.124, subd. 6(d).

The HUD report relied upon by Park Towers and the tax court, however, reports median family income, median low income by family size, and median very low income by family size. It does *not* report "area median income" as specified in the statute. When the literal meaning of a statute is not conclusive, or otherwise plain words result in ambiguity when applied to the subject matter, it is necessary to construe the meaning of the statute. *State v. Walsh*, 188 Minn. 412, 247 N.W. 523 (1933).

First we must determine which income table to use from the HUD report. In the usual case, homestead treatment does not require a property owner to meet any income requirements; however, the legislature provided specific income requirements for homestead treatment for leasehold cooperatives. This indicates the legislature's intention to promote housing for low and moderate income persons in rental cooperatives. Therefore the tax court correctly used the median lower income figures on the HUD report.

Next, we must decide whether the trial court properly used the median income by household size figure. If the median family income is used, a single person would qualify even though their income exceeds that indicated as the median income for a low income family of eight, as shown on the HUD report. This would yield an absurd result which is contrary to statutory construction. *Milband Mutual Ins. Co. v. Kluver*, 302 Minn. 310, 225 N.W.2d 230 (1974). Thus the median income by household size figures should be used.

In addition, it would be absurd not to combine incomes within a cooperative unit. If they are not combined, an unemployed spouse could qualify the rental unit even if the employed spouse had an income which exceeded the requirements of the statute. Incomes within a rental unit should be combined.

We conclude that the legislature intended tax assessors, when determining if homestead treatment for leasehold cooperatives applies, to measure cooperative incomes by combining all the incomes in a single rental unit against the lower income per household size on the HUD table. The tax court used the HUD table correctly.

Affirmed.

PAGE, J., took no part in the consideration or decision of this case.