HALBROOKS, Judge
Appellant challenges his convictions of and sentences for electronic solicitation of a child and fifth-degree possession of a controlled substance, arguing that (1) the state failed to produce sufficient evidence that he electronically solicited a child, (2) the district court erred by finding that the search-warrant application established probable cause to believe that his house would contain evidence of crimes of electronic solicitation of a child and possession of a controlled substance, and (3) his career-offender sentence must be reversed and remanded because the district court failed to properly instruct the jury and the state did not prove that he has at least five prior felony convictions. We affirm.
FACTS
In March 2014, appellant Gary Stephen Gundy left a note on a car that belonged to M.K., a 17-year-old girl who worked at a gas station. M.K. found the note when she walked to her car after completing her shift at work. The note stated, "if youre female like to have fun, maybe get Buzzed ... Im a middle aged man looking for someone to hang out with. I'm not ugly LOL. Tx me 2182606164." M.K. originally thought that someone left the note as a *761 joke. She did not contact the number, but she showed the note to her manager. Her manager later informed M.K.'s father that someone left the note on M.K.'s car.
M.K.'s father is a deputy sheriff for the St. Louis County Sheriff's Office. M.K.'s father called the number listed on the note, which belonged to Gundy, but no one answered. When Gundy returned M.K.'s father's call, her father did not answer. Gundy then texted M.K.'s father's phone and asked who called him. Her father decided to pose in his text message as a 16-year-old girl because his daughter and her co-worker were around that age. He began a texting conversation with Gundy, informing him that he received Gundy's note and was "interested." Gundy replied, and, after exchanging a few text messages, Gundy asked when the fictitious 16-year-old girl wanted to meet. They agreed to meet on the following Tuesday. Gundy also agreed to purchase whatever the 16-year-old girl wanted to "get buzzed." The following day, Gundy sent the 16-year-old girl sexually explicit text messages describing what he wanted to do to her when they met.
During their texting exchange, the 16-year-old girl eventually asked if she could bring her 15-year-old friend to the meeting. Gundy agreed to it, saying it would "B to fun." He also agreed to help the 16-year-old girl pay for gas to drive the girls to their meeting. After knowing that both fictitious girls would attend their meeting, Gundy used sexually explicit language to describe what he intended to do with both girls at his home. Gundy also agreed that he would provide them with marijuana, wine coolers, pornography, and "go fast," which referred to methamphetamine.
Following this conversation, M.K.'s father informed the Duluth Police Department about the note and his text-message exchanges with Gundy. The department began investigating, and a female employee from the Lakeview Drug and Task Force called Gundy on March 25 to set up a meeting for the next day. On March 26, the female employee called Gundy to confirm the meeting. That same day, two female Duluth police officers, acting as a fictitious 15-year-old girl and 16-year-old girl, waited at the school parking lot inside of a car at the scheduled meeting time. Gundy drove to their location, saw the plainclothes officers sitting in the car, and continued driving. After Gundy drove by the female officers, other officers stopped Gundy, arrested him, and seized a cell phone. Pursuant to a search warrant, officers searched Gundy's home and found the following: a light bulb that Gundy used as a smoking device, a tin container that contained methamphetamine, a sex toy, condoms, a pornographic DVD, and wine coolers. The officers also retrieved the text messages between M.K.'s father and Gundy from both of their phones.
After the police arrested Gundy and searched his house, Stephen Borchers, a St. Louis County sheriff's department investigator, interviewed Gundy. Investigator Borchers read Gundy his Miranda rights. Gundy stated that he understood his rights and agreed to speak with Investigator Borchers. Gundy admitted that he wrote the note placed on M.K.'s car, knew that one of the girls was 15, and bought wine coolers for the girls. Gundy told Investigator Borchers that he continued texting the girl because he wanted to see if he was being set up. Investigator Borchers asked Gundy if he thought that the encounter with the teenage girls would be "interesting," and Gundy replied, "I was going to see how it prevailed. You know? I was thinking, are you f-cking out of your mind or what? I mean, who wouldn't?"
The state charged Gundy with one count of electronic solicitation of a child in violation of Minn. Stat. § 609.352, subd. 2a(1), *762 and one count of possession of a controlled substance in the fifth degree in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2012). Gundy moved the district court to dismiss both charges, arguing there was insufficient probable cause to support the district court's issuance of the search warrant and that the district court should therefore suppress the evidence obtained through its execution. Gundy contended specifically that there was no probable cause because he communicated with a 16-year-old, not a ficticious 15-year-old. The district court denied Gundy's motion, reasoning that the statute did not require that he directly communicate with a 15-year-old.
Before trial, the state moved the district court to sentence Gundy as a career offender under Minn. Stat. § 609.1095, subd. 4 (2012), on the possession-of-a-controlled-substance charge. The district court held a bifurcated jury trial. In the first phase, the jury returned a guilty verdict on both charges. Following that verdict, the district court allowed the state to present evidence to the jury regarding whether Gundy is a career offender. The state introduced evidence of Gundy's prior felony convictions through conviction records and the testimony of a probation officer. The jury found that Gundy is a career offender. The district court sentenced Gundy to 36 months for his conviction of electronic solicitation of a child and 60 months as a career offender for his conviction of fifth-degree possession of a controlled substance, to be served concurrently. This appeal follows.
ISSUES
I. Was the evidence sufficient to support Gundy's conviction of electronic solicitation of a child?
II. Did the district court have a substantial basis to conclude that probable cause existed to search Gundy's house for evidence of crimes of electronic solicitation of a child and possession of a controlled substance?
III. Is Gundy entitled to a resentencing hearing because there was insufficient evidence to support the jury's verdict that Gundy is a career offender and because the district court failed to properly instruct the jury?
ANALYSIS
I.
Gundy challenges his electronic-solicitation-of-a-child conviction, arguing that the evidence was insufficient to prove his guilt under Minn. Stat. § 609.352, subd. 2a(1), because he did not directly contact the fictitious 15-year-old girl. Gundy's argument presents this court with a case of first impression-whether a person may solicit a child under Minn. Stat. § 609.352, subd. 2a(1), through an intermediary. We review this question of law de novo. See State v. Mauer , 741 N.W.2d 107, 111 (Minn. 2007).
Statutory Interpretation
When interpreting a statute, we first examine the statute to determine whether the statute's words are clear and unambiguous. State v. Rick , 821 N.W.2d 610, 613-14 (Minn. App. 2012), aff'd , 835 N.W.2d 478 (Minn. 2013). If "the legislature's intent is clear from plain and unambiguous statutory language," we look to the plain meaning of the statute without engaging in further statutory construction. Id. at 614 (quotation omitted). Minn. Stat. § 609.352, subd. 2a(1), prohibits "[a] person 18 years of age or older" from "us[ing] the Internet, a computer, ... or other electronic device capable of electronic data storage or transmission ... with the intent to arouse the sexual desire of any person" to "solicit[ ] a child or someone the person reasonably *763 believes is a child to engage in sexual conduct." A "child" is defined as "a person 15 years of age or younger." Minn. Stat. § 609.352, subd. 1(a) (2012).
Minn. Stat. § 609.352, subd. 1(c) (2012) defines "solicit" as "commanding, entreating, or attempting to persuade a specific person in person, by telephone, by letter, or by computerized or other electronic means." The supreme court discussed the meaning of "solicit" in the following passage:
The dictionary definition of "solicit" is "[t]o seek to obtain by persuasion, entreaty, or formal application." While we do not rely on this definition of solicit because the statute provides a definition, we note that the statute's definition appears to be in accord with the general understanding of the word "solicit." "Entreat" is defined as "[t]o make an earnest request of." "Earnest" is defined as "[m]arked by or showing deep sincerity or seriousness." Regarding an attempt to persuade, an "attempt" is defined as "[a]n effort or try." "Persuade" means "[t]o cause (someone) to do something by means of argument, reasoning, or entreaty." "Command" means "[t]o direct with authority; give orders to." The statute requires that the acts of commanding, entreating, or attempting to persuade be directed at a specific person.
State v. Koenig , 666 N.W.2d 366, 373 (Minn. 2003) (citations omitted).
At issue is whether Gundy "attempt[ed] to persuade" someone he reasonably believed to be a child to engage in sexual conduct. Minn. Stat. § 609.352, subds. 1(c), 2a(1). "Persuade" means to cause someone to do something by means of argument, reasoning, or entreaty, and an "attempt" is an effort or try. Koenig , 666 N.W.2d at 373. Thus, the statute broadly prohibits a person from attempting to persuade a child to engage in sexual conduct. No statutory language requires that the person persuade a child through direct communication in order to be convicted.
Further, we have previously affirmed a defendant's conviction under the child solicitation statute when the defendant contacted an undercover police officer but did not directly contact a child. State v. Coonrod , 652 N.W.2d 715, 722 (Minn. App. 2002), review denied (Minn. Jan. 21, 2003). In Coonrod , the defendant argued that there was insufficient evidence to show that he solicited "a specific person" he reasonably believed was a child because he only contacted a fictional computer persona that was directed by an undercover police officer. Id. In affirming the conviction, we reasoned that "[t]here is no reason to believe ... that the legislature, having forbidden 'solicitation' by computerized means, intended to exclude messages directed at a specific computer identity or 'persona' that a defendant believed represented a person who was underage." Id. at 723. We also stated that "[t]he purpose of the child-solicitation statute is to prohibit any persuasive conduct by adults that might entice children to engage in sexual activity." Id. (quotation omitted). Therefore, a person need not directly contact a child or fictitious child to be found guilty of an attempt to solicit.
The interpretation of a federal statute similar to Minn. Stat. § 609.352, subd. 2a(1), also supports our conclusion. 18 U.S.C. § 2422(b) (2012) prohibits a person from persuading or inducing someone younger than 18 to engage in sexual activity. Federal circuit courts have held that a person may be guilty under the statute if they contacted an intermediary only and not a child. See, e.g. , United States v. Clarke , 842 F.3d 288, 298 (4th Cir. 2016) (holding that "communications with an intermediary *764 aimed at persuading, inducing, enticing, or coercing a minor to engage in sexual activity fit within [the] common understanding of a criminal attempt that is prohibited by [ Section] 2422(b)" (alterations in original) ); United States v. Nestor , 574 F.3d 159, 161-62 (3d Cir. 2009) (determining that although the appellant "never communicated directly with a child, he took substantial steps that he believed would allow him to do so, and he is therefore guilty of an attempt" to persuade the child to engage in sexual activity).
The plain language of Minn. Stat. § 609.352, subd. 2a(1), Minnesota caselaw, and federal courts' interpretation of a similar federal statute all support the conclusion that a person need not directly contact a child in order to solicit the child under Minn. Stat. § 609.352, subd. 2a(1). This interpretation is also consistent with Minn. Stat. § 609.352, subd. 2a(1) 's objective. Subdivision 2a(1) seeks to "prohibit any persuasive conduct by adults that might entice children to engage in sexual activity." Coonrod , 652 N.W.2d at 723. If subdivision 2a(1) required instead that a defendant directly contact a child to be convicted, a defendant could circumvent the statute simply by employing an intermediary to carry out his intended objective. We therefore conclude, as a matter of law, that if there is proof beyond a reasonable doubt, an individual who makes statements to an intermediary with the objective of getting a child to engage in sexual conduct is guilty of violating Minn. Stat. § 609.352, subd. 2a(1).
Sufficiency of the Evidence
Because we have determined that a person may be convicted under Minn. Stat. § 609.352, subd. 2a(1), without directly contacting a child or fictitious child, we must next consider whether the evidence in this case was sufficient to support Gundy's conviction under the statute. Stated more specifically, we must consider whether the evidence was sufficient to prove that Gundy "attempted to persuade" the fictitious 15-year-old girl, someone Gundy reasonably believed was a child, to engage in sexual conduct through his statements made to the fictitious 16-year-old girl, the intermediary.
When considering a challenge to the sufficiency of the evidence, we conduct "a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." State v. Ortega , 813 N.W.2d 86, 100 (Minn. 2012) (quotation omitted). We assume that the jury believed the state's witnesses and disbelieved any contrary evidence. Id. "We will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and for the necessity of overcoming it by proof beyond a reasonable doubt, could reasonably conclude that [a] defendant was proven guilty of the offense charged." Bernhardt v. State , 684 N.W.2d 465, 476-77 (Minn. 2004) (alteration in original) (quotation omitted).
Gundy contends that we should apply the two-step analysis for circumstantial evidence to evaluate the sufficiency of the evidence as opposed to the direct-evidence method. See, e.g. , State v. Andersen , 784 N.W.2d 320, 329-30 (Minn. 2010) (explaining and applying circumstantial-evidence analysis). "Direct evidence is evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption." Bernhardt , 684 N.W.2d at 477 n.11 (quotation omitted). Circumstantial evidence is "[e]vidence based on inference and not on personal knowledge or observation." Id. If the state introduces direct evidence on each element of the offense, there is no need to apply the circumstantial-evidence standard of review.
*765 State v. Porte , 832 N.W.2d 303, 309 (Minn. App. 2013). Here, the state introduced direct evidence on each element. Therefore, we need not consider the two-step analysis for circumstantial evidence.
The direct evidence demonstrates that Gundy told the fictitious 16-year-old girl that she could bring a 15-year-old girl with her to their meeting and said that it would be "fun." The police found methamphetamine, a pornographic DVD, condoms, and a sex toy in his house. When the 16-year-old asked, via text, whether Gundy would "do [the 15-year-old girl] like me," he replied, "For sure we ll have us a porn party." He agreed to help with gas money so that the 16-year-old could pick up the 15-year-old. He also directed his sexually explicit text messages to both the 15-year-old girl and the 16-year-old girl, stating "U girls gonna do each othere with the toy and put my c-ck in each othere," "Cant wait [to] make u both squirt hard," "We gonna do it all till we cum and cum and cum I love t talk why we doing it all be a blast," "U girls sweet an sexy," and "B the time a ur life." During his interview with the police, Gundy stated that he was curious about the situation, admitted that his reference to "go fast" referred to methamphetamine, and admitted buying alcohol for the girls. When the officer asked him what would have happened if he had actually met the 15- and 16-year-old girls at the school, Gundy stated that they would have probably drunk a few beers and that he was not sure where it would have gone from there.
By specifically describing his intended sexual activity with the 15-year-old, traveling to the school where he believed he would meet the 15-year-old and guide her to his home, purchasing items, and preparing his home to host the sexual activities with the 15-year-old, Gundy attempted to bring about a meeting to engage in unlawful sexual activity with the 15-year-old. This evidence, "when viewed in the light most favorable to the conviction, was sufficient to permit the jurors" to have concluded that Gundy attempted to persuade someone he reasonably believed to be 15 years old to engage in sexual conduct. Ortega , 813 N.W.2d at 100 (quotation omitted).
In addition to proving that Gundy solicited a child, the state also had to prove that Gundy communicated with a child "with the intent to arouse the sexual desire of any person." Minn. Stat. § 609.352, subd. 2a. "[T]he 'intent to arouse' requirement applies to any person, not just the adult and child engaging in the communication." State v. Muccio , 890 N.W.2d 914, 922 (Minn. 2017). Gundy's intent was proved by his text messages that demonstrated that he acted with the intent to arouse his own sexual desire and/or the desires of the fictitious girls. When viewing the evidence in the light most favorable to the jury's verdict, a jury could have reasonably concluded that Gundy was proven guilty of attempting to persuade the fictitious 15-year-old to engage in sexual conduct, with the intent to arouse himself or either one of the girls. Therefore, we affirm Gundy's conviction of electronic solicitation of a minor under Minn. Stat. § 609.352, subd. 2a(1).
II.
Gundy argues the district court erred in its determination that probable cause existed to issue the search warrant for his home and that, as a result, the district court erred by denying his motion to suppress the evidence obtained from the search. A district court applies a totality-of-the-circumstances test in determining whether probable cause exists to issue a warrant. State v. Holiday , 749 N.W.2d 833, 839 (Minn. App. 2008). When analyzing the *766 sufficiency of an affidavit under the totality-of-the-circumstances test, a district court should not review the affidavit's components in isolation. Id ."[A] collection of pieces of information that would not be substantial alone can combine to create sufficient probable cause." State v. Jones , 678 N.W.2d 1, 11 (Minn. 2004). A district court may draw "common-sense and reasonable inferences from the facts and circumstances given." Holiday , 749 N.W.2d at 843 (quotation omitted). The district court should make a practical and commonsense decision of whether there is a fair probability that the police will find contraband or evidence of a crime in the particular place. State v. Zanter , 535 N.W.2d 624, 633 (Minn. 1995).
When reviewing a district court's decision to issue a warrant, we determine whether the issuing judge had a substantial basis to conclude that probable cause existed. State v. Harris , 589 N.W.2d 782, 788 (Minn. 1999). To determine if there was a substantial basis, we look to the "totality of the circumstances." State v. Rochefort , 631 N.W.2d 802, 804 (Minn. 2001). We give great deference to the district court's probable-cause determination. Id.
Here, the search-warrant application that officers submitted to the district court stated that Gundy sent the following texts, referring to both girls: "For sure we ll have us a porn party," "We gonna do it all till we cum and cum and cum I love t talk why we doing it all be a blast," "U girls sweet an sexy," "B the time a ur life," and "U girls gonna do each othere with the toy and put my c-ck in each othere." The application also stated that Gundy told the girls that he had alcohol, pot, and "go fast" and explained that based on the officer's training and experience, " 'go fast' is slang for 'speed,' also known as methamphetamine." The application further detailed that an employee from the Lake Superior Drug and Gang Task Force Office, pretending to be one of the girls, set up a meeting between Gundy and the two fictitious girls in a school parking lot on March 26, 2014. The district court authorized the search warrant, allowing the officer to search for evidence of child pornography in computer and electronic systems, telephone records, cellular telephones, and for evidence of controlled substances, including methamphetamine.
Gundy argues that this evidence does not establish probable cause that he solicited the fictitious 15-year-old girl because the search-warrant affidavit did not state that the text messages were communicated to the fictitious 15-year-old girl. As we have already concluded, Gundy was not required to directly contact the 15-year-old girl in order to solicit her. And if the police found the alcohol, marijuana, and methamphetamine at Gundy's home, the evidence would demonstrate that Gundy intended to fulfill his plan of engaging in sexual conduct with the fictitious girls, as he discussed in his text messages. Therefore, a district court could reasonably conclude that Gundy's home included evidence of electronic solicitation of a child or possession of methamphetamine. Based on the totality of these circumstances, this is a common-sense and reasonable inference. Holiday , 749 N.W.2d at 843. We conclude that the district court properly issued the search warrant for Gundy's home. Therefore, the district court did not err by denying Gundy's motion to suppress the evidence found in his home.
III.
Gundy argues that there was insufficient evidence to support the jury's verdict that Gundy is a career offender for purposes of his possession of a controlled-substance conviction because the state did not prove *767 that Gundy has five prior convictions. He also asserts that the district court erred because it did not properly instruct the jury at the conclusion of the sentencing trial.
Sufficiency of the Evidence
Minn. Stat. § 609.1095, subd. 4, authorizes increased sentences for offenders when the crime for which the sentence is imposed is a felony and the jury determines that "the offender has five or more prior felony convictions" and that "the present offense is a felony that was committed as part of a pattern of criminal conduct." A prior conviction is "a conviction that occurred before the offender committed the next felony resulting in a conviction and before the offense for which the offender is being sentenced under this section." Minn. Stat. § 609.1095, subd. 1(c) (2012). On appeal, Gundy does not challenge that the felonies were part of a pattern of criminal conduct. He only argues that the state did not prove that he has five or more prior felony convictions.
In reviewing the sufficiency of the evidence, this court is "limited to a painstaking analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, was sufficient to permit the jurors to reach the verdict which they did." Ortega , 813 N.W.2d at 100 (quotation omitted). We assume "the jury believed the state's witnesses and disbelieved any evidence to the contrary." Id. We will not disturb the jury's verdict if the jury, "acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense." Id.
The state presented evidence of Gundy's 14 convictions through conviction records and the testimony of a probation officer familiar with Gundy's criminal history. Out of these 14 convictions, at least five convictions, shown below, constitute a conviction in which a court convicted Gundy before he committed his next offense, therefore qualifying as a "prior conviction" under Minn. Stat. § 609.1095, subd. 1(c) :
Receiving-stolen-property conviction:
Offense date: between May 22, 1987 and July 7, 1987
Conviction date: May 10, 1988
Receiving-stolen-government-property conviction:
Offense date: September 6, 1988
Conviction date: August 9, 1989
Theft, movable-property conviction:
Offense date: January 22, 1997
Conviction date: February 23, 1998
Receiving-stolen-property conviction:
Offense date: September 11, 2000
Conviction date: August 19, 2002
Check-forgery conviction:
Offense date: March 18, 2005
Conviction date: June 1, 2005
The jury had to also determine that these convictions were felonies. The district court defined a felony as "a crime for which a sentence of imprisonment for more than one year may be imposed." The probation officer testified that Gundy was convicted of 14 felonies, as represented through the exhibits admitted into evidence. Relying on her notes, the probation officer stated that Gundy was convicted of (1) two felony convictions that occurred in May 1988, which included two separate convictions-both for receiving stolen property; (2) a 1989 federal "Felony Receiving Stolen Property" conviction; (3) an August 1995 felony check-forgery conviction; (4) a December 1997 "Felony Receiving Stolen property" conviction and "Felony Third Degree Burglary" conviction; (5) a December 1997 "Felony Receiving Stolen Property" conviction; (6) a February 1998 *768 felony theft conviction; (7) an August 2002 felony conviction for two counts of receiving stolen property; (8) an April 2002 felony receiving-stolen-property conviction; (9) a June 2005 felony conviction of possessing a short-barreled shotgun; and (10) another June 2005 conviction of felony fifth-degree controlled substance and felony check forgery.
Gundy cites no evidence in the record that contradicts the state's assertions that these convictions were felonies. Assuming that the jury believed the evidence presented by the state, which showed that Gundy has five "prior convictions" under Minn. Stat. § 609.1095, subd. 1(c), and the probation officer's testimony that the prior convictions were felonies, we conclude that the evidence was sufficient to permit the jurors to conclude that Gundy is a career offender under Minn. Stat. § 609.1095, subd. 4.
Jury Instructions
Gundy also argues that the district court erred by enhancing Gundy's sentence based on the career-offender statute because the district court failed to define for the jury whether any of his convictions satisfied the statutory definition of "prior conviction" under Minn. Stat. § 609.1095, subd. 1(c). Gundy did not object to the district court's instructions at trial. We therefore review the unobjected-to jury instructions for plain error. State v. Milton , 821 N.W.2d 789, 805 (Minn. 2012). We must consider whether the jury instructions contained an error that was plain and whether the error affected Gundy's substantial rights. Id. An error is plain if it is clear or obvious. Id. We review jury instructions to determine whether they "fairly and adequately explain the law of the case." Id.
At the sentencing trial, the district court instructed the jury as follows:
At this proceeding, you shall consider whether an aggravating factor exists. It will be put to you in the form of questions that will appear on the verdict form. The questions are: First, does Mr. Gundy have five or more prior felony convictions, not including the present offenses? Second, is the present offense a felony? Third, were the present offenses committed as a pattern of criminal conduct?
....
The career offender aggravating factor exists if the defendant has five or more felony convictions and you, the jury, find that the present offense was committed as part of a pattern of criminal conduct. Felony means a crime for which a sentence of imprisonment for more than one year may be imposed. A pattern of criminal conduct refers to acts related to one another through a common scheme or plan or share criminal purpose. The pattern may be shown by proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, or other shared characteristics.
The district court did not define "prior conviction" for the jury. Gundy asserts that this omission constitutes plain error. We need not decide in this case whether the district court's failure to define "prior conviction" was error that was plain because any alleged error did not impact Gundy's substantial rights. See State v. Larson , 787 N.W.2d 592, 601-02 (Minn. 2010) (declining to consider whether the district court's use of jury instructions constituted an error that was plain because it concluded any alleged error was harmless). An error affects substantial rights if "the error was prejudicial and affected the outcome of the case." State v. Griller , 583 N.W.2d 736, 741 (Minn. 1998). The supreme court has defined plain error *769 as prejudicial if there is a "reasonable likelihood that the giving of the instruction in question would have had a significant effect on the verdict of the jury." Id. (quotation omitted).
Here, the probation officer testified that Gundy was convicted of 14 felonies. And as we previously discussed, the conviction records show that five of these convictions occurred before the date of his next offense. And Gundy's attorney appeared to concede that Gundy has five prior felonies during his closing argument, stating:
[M]y understanding is there has to be: Does Mr. Gundy have five or more prior felony convictions, not including the present offense? And there's obviously convictions, but what convictions are connected as a pattern? And you need to look at it yourself. I mean, if these look like drug crimes to you, and the very little information [the probation officer] gave you connects them all, then the burden is met. But I don't see it.
We conclude that the district court's failure to provide a jury instruction defining the term "prior conviction" had no significant impact on the jury's verdict because the evidence only supports a finding that Gundy has five prior felony convictions. Therefore, Gundy cannot demonstrate that the alleged error affected his substantial rights, and he is not entitled to a new sentencing trial.
DECISION
The district court had a substantial basis to conclude that the search-warrant application established probable cause that evidence of crimes or contraband would be located in Gundy's house, and the state's evidence was sufficient to prove beyond a reasonable doubt that Gundy electronically solicited a child to engage in sexual conduct. Although the district court did not define "prior conviction" for the jury, this omission did not affect Gundy's substantial rights. Gundy is not entitled to a new sentencing trial because the evidence sufficiently proved that he is a career offender.
Affirmed.