STATE of Minnesota, Respondent,

v.

Ralph E. TRIMBLE, Appellant.

No. C4–84–1189.

Court of Appeals of Minnesota.

Aug. 6, 1985.

Review Denied Oct. 11, 1985.

922

Hubert H. Humphrey, III, Atty. Gen., Paul R. Kempainen, Sp. Asst. Atty. Gen., St. Paul, Fred R. Kraft, Mower Co. Atty., Austin, for respondent.

C. Paul Jones, State Public Defender, Renee J. Bergeron, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and WOZNIAK and RANDALL, JJ., with oral argument waived.

## OPINION

RANDALL, Judge.

Appellant Ralph Trimble was convicted of criminal sexual conduct in the first degree, Minn.Stat. § 609.342(e)(i) (1982). On appeal he raises a number of issues: suggestive pretrial identification procedures, insufficient evidence, destruction of evidence, refusal to give an instruction, jury coercion, error in admission of evidence and erroneous jury instruction. We affirm.

## FACTS

The complainant was sexually assaulted on August 2, 1983, at about 1:30 a.m. The

real issue at trial was the identity of her assailant.

Over objection, the complainant testified that she had recently taken a college course on self-defense and applied some of her lessons during the assault. During the assault, which lasted about one and one-half hours, she attempted to mark her assailant by scratching him near his left eye and by ripping a hole in the seam of his shirt. She testified that she looked at her attacker's face every chance she got to help her remember distinguishing characteristics.

After the assault the complainant described her assailant to police as between 5′8″ and 5′11″, mid 20's with dark curly hair, dark beard, blue shirt, blue jeans and tennis shoes. The hair was particularly unusual—fuzzy, sticking out on the sides, short and thinning on top.

The BCA chemist who performed lab tests testified that the seminal fluid in the vaginal sample was consistent with 33 percent of the male population and that appellant's blood factor placed him within this group. The samples confirmed that the victim was having her period on August 2.

Appellant, who had been seen shortly after the assault by police officers while walking near the assault scene, had dirt and grass stains on his clothes and scratches on his face when later arrested that morning. He was wearing tan clothes; his shirt had dark blue piping.

After the complainant had been examined at a hospital, she identified appellant's shirt at the police station. A police captain took her back to the scene of the assault where they found four quarters, a man's comb, and the victim's sanitary napkin which had come off during the assault. The captain took the napkin as evidence but later threw it away because the BCA lab did not need it.

Around 8:00 that morning the police captain showed the complainant a photo lineup of seven photos. He told her to look only at the faces. Appellant was in the photo lineup with the top portion of his prison issue orange jumpsuit showing. His photo was also the only one dated. Complainant immediately identified appellant as her assailant.

At trial appellant denied assaulting the complainant. He explained the dirt and grass stains on his clothes as having resulted from a tackle football game that afternoon and explained a scratch on his face as being from a fight that evening outside a downtown bar. He claimed he was in the area that hour of the night because he was unsuccessful in finding a place to sleep at a friend's house and was walking back to his parent's home 12 miles away.

## ISSUES

1. Was the pretrial photo lineup impermissibly suggestive?

2. Was the evidence sufficient to convict appellant of first degree criminal sexual conduct?

3. Was appellant prejudiced by the destruction of evidence?

4. Was the jury coerced into reaching its verdict?

5. Did the prosecutor commit prosecutorial misconduct in closing argument?

6. Did the trial court err in admitting testimony that the victim had attended a sexual defense class?

7. Did the trial court err in instructing the jury that testimony of a complainant need not be corroborated?

## ANALYSIS

### I.

*Pretrial identification*

Appellant argues that the pretrial identification procedures were impermissibly suggestive, giving rise to a very substantial likelihood of irreparable misidentifica-

tion. *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968). At the omnibus hearing, although he had raised the constitutionality of the photo lineup as an issue, defense counsel conceded the identification was proper.

Appellant points to the fact that his photo was dated and showed him dressed in an orange jail jumpsuit, the top part of which is visible. He also makes much of the fact that, because he was recently awakened from sleep and was not allowed time to comb his hair, his hair was messy when his photo was taken.

The lineup photos were primarily of individuals faces; moreover orange clothing is not necessarily suggestive of jail clothing. The victim testified she based her identification on appellant's facial features, not clothing. Similarly, the fact that appellant's hair was messy is of little significance; the victim did not mention this as a factor in identifying appellant. While the photo of appellant should not have been dated, nothing shows the victim's identification was based on this. In fact, she testified she did not notice or recall any writing on the photo.

■ Although displaying appellant's photograph in this manner was not reversible error, it was improper for police to photograph him in jail garb with messy hair. Defendants should be allowed to comb their hair and dress in street clothes prior to being photographed for a lineup. Viewed in the totality of the circumstances, we agree with the trial court's determination that the photo display was not unduly suggestive. However, these same factors under other circumstances could be found impermissibly suggestive.

Appellant has not shown a "very substantial likelihood of irreparable misidentification." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (citation omitted). Here, factors other than those mentioned by appellant were critical to the victim's identification. She

had an opportunity to view her assailant over a 90 minute span, and was concentrating on his face the whole time. Her level of certainty was positive and she made the identification only five hours after the assault, although the in-court identification was made about five months later.

## II.

### *Sufficiency of the evidence*

■ We have reviewed the record and find there was sufficient evidence for the jury to convict appellant. The victim's strong identification testimony was corroborated by the scratch on appellant's face, the hole in the seam of his shirt, the presence of appellant at the scene of the assault shortly after the incident, his presence in the general area before the attack, and the dirt and grass stains on appellant's clothes. We note that, although not required to produce witnesses, appellant's testimony was that he did not know anyone at the tackle football game which was important to his explanation of the grass and dirt stains on his clothing. Appellant's explanations for the various pieces of evidence the State presented left gaps that the jury was entitled to consider in assessing his credibility.

Finally, the scientific evidence, although short of affirmatively pointing to appellant, failed to rule him out as her assailant.

## III.

### *Prejudicial loss of evidence*

Appellant claims he was prejudiced by the captain's destruction of the sanitary napkin. He argues that because the napkin was material evidence relevant to the victim's physical condition, he must be acquitted.

The trial court found that the police captain did not act in bad faith, although he may have been negligent. *See State v. Koehler,* 312 N.W.2d 108, 109–10 (Minn.

1981); *State v. Carlson*, 267 N.W.2d 170, 174–75 (Minn.1978). The BCA told the captain that they did not need the item and were not going to test it. The issue raised is that the captain failed to notify prosecution or defense counsel before he threw the item out.

■ Preservation of evidence at the crime scene is an important part of police procedure. The officer should not have discarded the sanitary napkin. However, the destroyed evidence was not so material as to mandate a new trial on those grounds. There was sufficient evidence for a jury to convict. As the trial court reasoned in its memorandum denying appellant's motion for acquittal or a new trial:

> Defendant's argument is that the sanitary napkin would have been important to the result here because it implied that the rapist would have been marked by the victim's menstrual blood. The potential impact of the sanitary napkin on the resulting verdict is severely limited, and for three reasons:
>
> 1. The testimony of the victim and of [Captain] established that the victim was having her period on the day of the rape. That was uncontested.
>
> 2. Both [Captain] and the victim were cross-examined at some length on the issue, making any introduction of the sanitary napkin cumulative at best. Cf. *Minn.R.Evid.* 403.
>
> 3. Most significantly, Defendant's argument that the assailant would necessarily have been marked by the victim's menstrual blood is of limited probative force. The victim testified that her attacker forced her to engage in anal and oral sex, as well as vaginal sex, all of which would tend to limit the finding of menstrual blood on the Defendant. Thus, introduction of the evidence would have had little effect on the jury's decision.

Under these circumstances, the napkin was not irreplaceable material evidence the neg-ligent loss of which requires the sanction of acquittal. Other evidence of appellant's guilt satisfies the conviction. *State v. Koehler*, 312 N.W.2d at 109 (Minn.1981); *State v. Hill*, 287 N.W.2d 918, 920 (Minn. 1979); *see State v. Campion*, 353 N.W.2d 573, 581 (Minn.Ct.App.1984).

## IV.

### *Jury deliberations*

The jury began deliberating around 4:00 p.m. At about 11:00 p.m. the foreman advised the trial court that the jury was deadlocked, 10–2. The judge polled the jurors. Only one juror indicated that more progress was likely that evening. The court announced that deliberation would end and the jury would reconvene at 9:00 the next morning.

■ The judge also told the jury that arrangements had been made with two motels. The bailiffs subsequently learned that one of the two motels lacked hot water that night because of a plumbing problem. He advised the judge of this and the judge told the bailiff to inform the jurors. Upon learning of the situation, the jury continued to deliberate until about 2:00 a.m. when they returned with a guilty verdict.

Appellant argues that, under these circumstances, the jury was coerced to reach its verdict. The State contends the jury was not coerced but freely chose to go back to work.

In *State v. Hill*, 287 N.W.2d at 920–21 (Minn.1979), the bailiff apparently advised the jury around 8:00 p.m. that because of the State basketball tournament and shortage of downtown St. Paul hotel rooms, a non-downtown hotel would have to be used. Three hours later the jury reached a guilty verdict.

In affirming, the supreme court noted this was a situation where the bailiff was not trying to influence or pressure the jury "but was simply letting the jurors know— as they had a right to know—what the

situation was regarding sleeping accommodations if they could not reach a verdict that night." *Id.* at 921. The court noted:

> * * * the matter of what the bailiff tells the jury concerning nighttime accommodations is a serious matter and that it might be better dealt with by the trial judge, with the presence of defendant and counsel, informing the jury of the options in open court.

*Id.*

We do not agree with appellant that the situation here involved an element of improper coerciveness. "There is nothing showing the jury felt compelled to deliberate into the late hours of the night." *State v. Hodge*, 362 N.W.2d 347, 350 (Minn.Ct. App.1985), *pet. for rev. denied*, (Minn. April 26, 1985). The fact that a verdict was not reached until several hours after the jury was told of the accommodations reaffirms the lack of any coerciveness in the situation.

However, in this situation, sequestration should have been handled more carefully. The court had other options less likely to have the appearance of pressuring the jury. Other accommodations could have been sought. The judge could have called counsel for both sides and given them the choice of mutually agreeing to send the jurors home for the night without disclosing to the jury the inadequate accommodations they might be facing if they did not reach a verdict. However, under the circumstances, we do not find reversible error.

## V.

*Prejudicial closing argument*

Appellant challenges the propriety of the prosecutor's closing argument in which the prosecutor states:

> Presumption of innocence is like a blank chalkboard. There is nothing on there against the defendant, and until you go into the jury room and start determining what evidence is credible and what evidence there is against the defendant, that presumption stays with him. The chalkboard stays blank. When you enter the jury room you will discuss among yourselves the evidence which you have heard, the testimony of the various witnesses, and you'll decide which evidence or items of evidence to believe. And believable evidence is written down, or in this analogy, put on a chalkboard. *As more and more evidence against the defendant is found to be credible, gradually the presumption of innocence disappears.* (emphasis added)

The State argues the prosecutor's argument was the "bursting bubble" theory, i.e., once sufficient evidence is produced to rebut the presumption the presumption vanishes, which should be a permitted argument in criminal trials. IX Wigmore on Evidence, § 2511 (3d Ed.1940); *See U.S. v. Nimerick*, 118 F.2d 464 (2d Cir.) *cert. denied*, 313 U.S. 592, 61 S.Ct. 1117, 85 L.Ed. 1546 (1941) (presumption of innocence is not "evidence" in favor of defendant); *see generally, U.S. v. Fernandez*, 496 F.2d 1294 (5th Cir.1974).

■ The closing argument here is troublesome. It suggests that once a large amount of evidence is presented, appellant loses the presumption of innocence. That is incorrect. The legal standard for conviction is proof beyond a reasonable doubt, and that standard does not depend on quantity. It depends completely on the jury's evaluation of whatever is presented. *See State v. Jensen*, 308 Minn. 377, 380, 242 N.W.2d 109, 111 (1976) (disapproving argument that presumption of innocence was a shield for the innocent, not a cloak for the guilty and that when the State has proven its case "the presumption of innocence falls like a cloak, it drops, it disappears.")

■ However, the prosecutor's misstatement of the standard does not require reversal because the trial court fully instructed the jury on presumption of innocence

and appellant argued at length against the prosecutor's "blank chalkboard" theory. The court told the jury that the prosecutor's argument was "an incorrect statement of the law * * * that presumption does not gradually disappear, but it does not disappear whatsoever unless and until a defendant's guilt is proved beyond a reasonable doubt." The prosecutor's remarks, while improper, do not require a reversal, since they likely did not play a "substantial part in influencing the jury to convict," the standard set out in *State v. Caron*, 300 Minn. 123, 218 N.W.2d 197 (1974).

## VI.

### *Evidentiary ruling*

■ Appellant challenges the admission of testimony regarding the victim's attendance at a sexual assault defense class. He claims the admission was prejudicial error because the victim was not an expert under Minn.R.Evid. 702.

The trial court admitted the victim's testimony to corroborate her actions during the assault. She testified that she attempted to mark her assailant and his clothing and to study his face as she had been taught. There is no merit to the argument that she gave improper expert testimony. Her testimony was not "expert" nor was it even "opinion" testimony.

## VII.

### *Jury instructions*

■ Appellant asserts that the trial court erred in instructing the jury on Minn. Stat. § 609.347, subd. 1 (1982). This issue was previously discussed in *State v. Williams*, 363 N.W.2d 911 (Minn.Ct.App.1985) *pet. for rev. denied* (Minn. May 1, 1985). We note that while the lack of corroboration in a sexual assault case is an evidentiary matter which should not be included in instructions, considering the instructions given as a whole, we do not find that instruction sufficient to warrant a new trial.

## DECISION

Appellant's conviction for criminal sexual conduct in the first degree is affirmed.

Affirmed.