*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-2013**

State of Minnesota,
Respondent,

vs.

Paul Ronny Barsness,
Appellant.

**Filed October 27, 2014
Affirmed
Chutich, Judge**

Otter Tail County District Court
File No. 56-CR-12-1983

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Chutich, Presiding Judge; Ross, Judge; and Stoneburner, Judge.[*]

---

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**CHUTICH**, Judge

Appellant Paul Barsness appeals his conviction of second-degree criminal sexual conduct, alleging that the prosecutor committed three acts of misconduct. Because two of the challenged acts are not misconduct, and the third does not affect Barsness's substantial rights, we affirm. Barsness also raises a pro se claim of ineffective assistance of counsel, which we reject.

**FACTS**

Paul Barsness was convicted of second-degree criminal sexual conduct for his actions involving A.N., the ten year-old daughter of a co-worker. In late December 2011, Barsness moved into the house of the co-worker and her family; he stayed in an upstairs bedroom across from A.N.

Shortly after Barsness moved out of the house in March 2012, a neighbor observed Barsness grab A.N.'s arm and take her into the house. The neighbor thought Barsness's treatment of A.N. looked suspicious, so he followed them into the house. A.N.'s stepfather then came upstairs from the basement and asked Barsness to leave, which he did.

The neighbor told the stepfather that he was concerned about A.N. and was going to contact the authorities. That night, A.N. told her stepfather that Barsness used to touch her inappropriately when he lived with them. Although the stepfather did not report these allegations, the neighbor contacted the sheriff and child protection and gave a full statement of his concerns.

Fergus Falls Police Officer Kevin Sonstebo and a social worker met with A.N. a few days later. Officer Sonstebo told A.N. they were meeting because he had received a neglect report. Before he mentioned Barsness, A.N. volunteered that Barsness had been touching her inappropriately. A.N. exclaimed that she "[couldn't] take this anymore." When Officer Sonstebo asked what she meant, A.N. referred to Barsness. Sonstebo arranged for a CornerHouse interview,[1] and a Clay County social services worker drove to Fergus Falls to conduct the interview later that same day.

Based on A.N.'s CornerHouse interview, the Otter Tail County Attorney charged Barsness with first-degree criminal sexual conduct—sexual penetration or contact with a victim under 13 years old, and second-degree criminal sexual conduct—sexual contact with a victim under 13 years old. *See* Minn. Stat. §§ 609.342, subd. 1(a), .343, subd. 1(a) (2012). Before trial, the state gave no *Spreigl* notice.

A.N. testified at the trial. She said that Barsness used his hand to touch her vagina under her clothes. She also testified that Barsness carried her out of her bed and into his room and, while both were clothed, repeatedly pushed his penis against her buttocks. She said that on one occasion she tried to run away, but Barsness grabbed her and would not let her leave. A.N. further testified that after Barsness returned to the house and spoke to her, she told her stepfather about Barsness touching her. She also recounted meeting with Officer Sonstebo and giving the CornerHouse interview.

---

[1] A CornerHouse interview is a protocol for questioning young children and involves, among other things, the use of open-ended questions and anatomically correct drawings.

3

A.N.'s mother testified that although she never witnessed any inappropriate behavior between Barsness and A.N., she had concerns about their "flirty" relationship and considered asking Barsness to leave the house several times. The mother also stated that, after moving out, Barsness twice returned to the house to bring her drugs. A.N.'s mother said that the first time Barsness returned he told her, "I hope [A.N.] doesn't say anything." On the second visit, he questioned the believability of A.N.

Barsness's counsel cross-examined the mother about Barsness's girlfriend, asking how often she stayed overnight at the house. Counsel also asked if there was an investigation into Barsness's relationship with his girlfriend and if A.N. was questioned by police about that investigation. On redirect, the state asked if there were issues with the girlfriend. When the mother affirmed that there were, the prosecutor asked how old the girlfriend was, to which the mother responded that she believed the girlfriend was 16. She also stated that the girlfriend lived with her parents.

A.N.'s stepfather also testified at trial. He recounted the day that Barsness returned to the house in April, and that immediately following his return, the neighbor said he was calling the authorities. The stepfather also testified that after he asked Barsness to leave that day, A.N. came to him in tears and said that Barsness came into her room at night, carried her into his room, and touched her. He further testified that while Barsness lived in the house, he was uncomfortable with Barsness's interactions with A.N.

On cross-examination of the stepfather, Barsness's counsel again asked how often Barsness's girlfriend stayed at the house. On redirect, the state asked him about the age of the girlfriend, which he also stated was 16.

Officer Sonstebo and the social services worker who conducted the CornerHouse interview testified. Officer Sonstebo detailed his relationship with A.N., and his involvement with the case, including his meeting with A.N. about Barsness. The social services worker explained CornerHouse interviews and discussed A.N.'s CornerHouse interview.

A video of the CornerHouse interview with A.N. was played for the jury. In the interview, A.N. said that Barsness touched her vagina, breasts, and buttocks. She said that on occasion Barsness laid next to her in bed fully clothed and that she could feel his penis. She said that Barsness entered her room and carried her to his bedroom. She said that most touching was over her clothes, but on one occasion he took off her underwear and touched her vagina.

Barsness testified in his defense and denied touching A.N. inappropriately. During cross-examination, the state inquired as to the investigation about his relationship with his girlfriend. The state asked Barsness if he was aware that the investigation included the fact that he was providing methamphetamine to his girlfriend in exchange for sex. Barsness said he was not aware.

The jury acquitted Barsness of first-degree criminal sexual conduct but convicted him of second-degree criminal sexual conduct. The district court sentenced Barsness to 72 months in prison. This appeal followed.

## D E C I S I O N

### I.  Prosecutorial Misconduct

On appeal, Barsness argues that the prosecutor committed three acts of misconduct: (1) eliciting character evidence in the form of the girlfriend's age, (2) improperly shifting the burden of proof during closing argument, and (3) eliciting *Spreigl* evidence without previously providing notice by asking Barsness about exchanging methamphetamine for sex with his girlfriend.  We address each in turn.

Allegations of unobjected-to prosecutorial misconduct are reviewed under a modified plain-error test.  *State v. Carridine*, 812 N.W.2d 130, 146 (Minn. 2012) (citing *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006)).  The defendant must establish that the misconduct was plain error.  *Id.*  An error is plain if it contravenes case law, a rule, or a standard of conduct.  *Ramey*, 721 N.W.2d at 302.

Upon making this showing, the burden then shifts to the state to show that the error did not affect the defendant's substantial rights.  *Carridine*, 812 N.W.2d at 146.  A plain error does not affect the defendant's substantial rights if "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict."  *State v. Hohenwald*, 815 N.W.2d 823, 834 (Minn. 2012) (quotation omitted).  Factors to consider include the strength of the evidence against the defendant, the pervasiveness of the misconduct, and whether the defendant had the opportunity or made efforts to rebut the impropriety.  *Id.* at 835 (quoting *State v. Davis*, 735 N.W.2d 674, 682 (Minn. 2007)).  Misconduct is examined both individually and cumulatively to determine if it denied a defendant a fair trial.  *State v. Dobbins*, 725

6

N.W.2d 492, 506 (Minn. 2006). If the state does not meet this burden of showing the errors did not affect a defendant's substantial rights, this court will then assess "whether it should address the error to ensure fairness and the integrity of the judicial proceedings." *Davis*, 735 N.W.2d at 682 (quotation omitted).

## A. Character Evidence

Barsness first claims that the prosecutor committed misconduct by eliciting improper character evidence in the form of his girlfriend's age. We disagree.

A prosecutor may commit misconduct by attempting to elicit or actually eliciting clearly inadmissible evidence, even if the district court does not rule on the admissibility of the evidence. *State v. Fields*, 730 N.W.2d 777, 782 & n.1 (Minn. 2007). In general, evidence of a person's character or trait is not admissible to prove action in conformity therewith on a particular occasion. Minn. R. Evid. 404(a). But rule 404(a) applies "only when character evidence is used to show that a person acted in conformity with his character. When character evidence is used for some other purpose, Rule 404(a) does not apply . . . ." *State v. Blair*, 402 N.W.2d 154, 157 (Minn. App. 1987) (citation omitted).

On cross-examination, Barsness questioned both the mother and stepfather about how often his girlfriend stayed overnight. These questions were presumably to establish that Barsness did not have the opportunity to commit the crimes charged. On redirect, the prosecutor inquired into the girlfriend's age to establish that not only did the girlfriend live with her parents, but that she was 16 years old.

We conclude that this line of questioning did not elicit impermissible character evidence. The purpose of this questioning was to rebut the inference—first raised by

7

defense counsel—that Barsness lacked the opportunity to commit his crime. Barsness claims that the state could have established this point merely by asking if the girlfriend permanently resided with him. But a 16 year-old who lives with her parents is far less likely to spend time away from her residence than an adult, especially overnight. This evidence was not used to show "action in conformity" with Barsness's character. Minn. R. Evid. 404(a). Because this evidence was used "to provide a factual background for the jury's understanding," *see Blair*, 402 N.W.2d at 157, we cannot conclude that it was misconduct.

### B.    *Closing Argument*

Barsness's next claim of prosecutorial misconduct regards the prosecution's rebuttal closing argument. Specifically, Barsness claims that the prosecution improperly shifted the burden of proof by saying "I don't care if there's a lot of doubt; it can be bits and pieces that don't necessarily fit in the puzzle, but you can still see that picture of the puzzle if there's three, four, five, six pieces missing when there's a hundred, or there's 50, or 25."

This court reviews closing arguments in their entirety in determining whether prosecutorial misconduct occurred. *State v. Vue*, 797 N.W.2d 5, 15 (Minn. 2011); *see also State v. Walsh*, 495 N.W.2d 602, 607 (Minn. 1993) ("We look . . . at the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence."). Although the state has the burden to prove all elements of the offense, *State v. Race*, 383 N.W.2d 656, 664 (Minn. 1986), the

8

prosecution is not required to make a colorless argument, *State v. Williams*, 586 N.W.2d 123, 127 (Minn. 1998).

Barsness relies on *State v. Trimble*, 371 N.W.2d 921 (Minn. App. 1985), *review denied* (Minn. Oct. 11, 1985), to support his argument that the prosecutor improperly suggested that the burden of proof depended on the quantity of evidence. In *Trimble*, the prosecutor likened the presumption of innocence to a chalkboard, stating that as more evidence is written on the chalkboard, the presumption of innocence gradually disappears. *Id.* at 926. This court disapproved of this argument as it suggested that reasonable doubt depended on the quantity of evidence. *Id.*

Here, the prosecutor did use numbers in her closing argument. And, with her use of "I," she did inappropriately refer to her thoughts in the lead-in sentence to the puzzle metaphor. But the puzzle metaphor itself was not used to quantify the presumption of innocence or the burden of proof. Instead, the prosecutor likened reasonable doubt to a puzzle, suggesting that even with a few pieces missing, the picture could still be seen. She gave this example to rebut Barsness's argument that reasonable doubt existed and to contend that key pieces of evidence supported the charges.

An examination of the closing argument in its entirety shows that the argument appropriately focused on the facts elicited at trial. The statement at issue was but two sentences in an argument totaling 47 transcript pages, and it was made to rebut suggestions by Barsness regarding reasonable doubt. This statement was not misconduct.

Nor do we conclude that this metaphor was an attempt to shift the burden of proof. The prosecutor properly stated the burden of proof in her argument. In addition, the

9

district court here informed the jury of the state's burden of proof and gave a proper definition of reasonable doubt. *See State v. McDonough*, 631 N.W.2d 373, 389 n.2 (Minn. 2001) ("[A] prosecutor's attempts to shift the burden of proof are often nonprejudicial and harmless where, as here, the district court clearly and thoroughly instructed the jury regarding the burden of proof.")

### C. Spreigl *Evidence*

Barsness further asserts that the prosecutor committed plain error by asking him if he was aware the investigation involving his girlfriend included an allegation that he was trading methamphetamine for sex. Barsness argues that this improper question referenced *Spreigl* evidence without following the required procedural protections. We agree.

"Evidence of another crime, wrong, or act is not admissible to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). This evidence may be used for other purposes, such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."[2] *Id.* The danger of this evidence is that the jury may convict the defendant because of the other bad acts and not because of the defendant's guilt of the charged crime. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006). To use this evidence in a criminal prosecution, "the prosecutor gives notice of its intent to admit the evidence consistent with the Rules of Criminal Procedure . . . ." Minn. R. Evid. 404(b); *see also State v.*

---

[2] This evidence is referred to in Minnesota as *Spreigl* evidence after *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965).

10

*Coonrod*, 652 N.W.2d 715, 720 (Minn. App. 2002) ("The state must provide the defense with written pretrial notice of any evidence of other crimes or bad acts that it intends to present at trial . . . ."), *review denied* (Minn. Jan. 21, 2003).

Minnesota Rule of Criminal Procedure 7.02 sets forth the requirements for introducing evidence of other crimes, wrongs, or act. The prosecutor must notify the defendant in writing of any bad act that may be offered at trial under Minnesota Rule of Evidence 404(b). Minn. R. Crim. P. 7.02, subd. 1. No notice is required if the bad act was previously prosecuted, is offered to rebut the defendant's character evidence, or arises out of the same episode as the charged offense. *Id.* In felony cases, this notice must be given at or before the Omnibus hearing, or as soon as the other bad act becomes known to the prosecutor. *Id.*, subd. 4(a).

The question about the nature of the state's investigation of Barsness's relationship with his girlfriend referenced evidence of a bad act otherwise prohibited by rule 404(b). And the parties do not dispute that no *Spreigl* notice was given. Failure to give notice of *Spreigl* evidence contravenes Minnesota Rule of Criminal Procedure 7.02 and is error. *Cf. Coonrod*, 652 N.W.2d at 720-21 (holding that failure to provide *Spreigl* notice was not harmless error). Accordingly, Barsness has met his burden of showing error that was plain. *See Ramey*, 721 N.W.2d at 302.

Rule 7.02, subdivision 1 does provide an exception to the notice requirement, however; if the defendant opens the door, the state may then offer evidence of other bad acts without notice to rebut the defendant's character evidence. Minn. R. Crim. P. 7.02, subd. 1(b); *see also State v. Bailey*, 732 N.W.2d 612, 622 (Minn. 2007) (discussing the

11

"opening the door" doctrine). Here, Barsness did not open the door to inquiry into the *substance* of the investigation by eliciting testimony that there *was* an investigation. Because Barsness did not present character evidence for the state to rebut, this exception does not apply.

Furthermore, Barsness's questions about the investigation were to support his claim about the substance of his conversation with A.N. in April 2012. He claims that when he asked A.N. if she talked to the police, he meant this investigation and not the criminal sexual conduct at issue here. These questions did not open the door to inquiry about the substance of the investigation. *See* Minn. R. Crim. P. 7.02, subd. 1(b).

### D.     *Substantial Rights*

Once a defendant establishes plain error, the burden then shifts to the state to show that the error did not affect the defendant's substantial rights. *Ramey*, 721 N.W.2d at 302. This burden requires a showing that "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict of the jury." *Id.* (quotation omitted). In assessing this showing, we consider the strength of the evidence against the defendant, the pervasiveness of the misconduct, and the defendant's opportunity and efforts to rebut the impropriety. *Davis*, 735 N.W.2d at 682. We examine misconduct both individually and cumulatively to determine if it denied a defendant a fair trial. *Dobbins*, 725 N.W.2d at 506.

Applying these principles, we conclude that the isolated error did not have a significant effect on the verdict. First, the state's case was strong. A.N. gave testimony detailing the sexual contact between herself and Barsness largely consistent with her

12

CornerHouse interview, while the jury heard and received a transcript of that recording. Officer Sonstebo testified that A.N. brought up the sexual contacts without him first telling her why she was being interviewed. The mother and the stepfather testified about their concerns over the nature of Barsness's relationship with A.N. And a neighbor noticed inappropriate behavior by Barsness toward A.N. that caused him to contact the authorities.

Second, the misconduct was not pervasive: the sole plain error—the question regarding the nature of the state's investigation—was limited to a single question. Although the prosecutor referenced in closing that A.N. saw Barsness do drugs with his girlfriend, she did not reference an exchange of drugs for sex. Furthermore, the effect of this question was lessened because the jury was properly informed that an attorney's questions are not evidence. This single error did not affect Barsness's substantial rights.[3]

Finally, the jury acquitted Barsness of the more serious charge. Acquittal suggests that alleged misconduct did not play a substantial role in a conviction. *State v. Fitzgerald*, 382 N.W.2d 892, 896 (Minn. App. 1986), *review denied* (Minn. Apr. 24, 1986); *cf. Davis*, 735 N.W.2d at 682 (reasoning that misconduct did not affect substantial rights because of an acquittal of one charge). Upon this record, "there is no reasonable likelihood that the absence of the misconduct in question would have had a significant effect on the verdict." *Hohenwald*, 815 N.W.2d at 834 (quotation omitted).

---

[3] Even cumulatively, the errors alleged by Barsness were not pervasive. The inquiries into the girlfriend's age and the prosecutor's statement in closing make up little more than one page of the transcript in a trial that ran for three days.

## II.    Ineffective Assistance of Counsel

In a pro se supplemental brief, Barsness argues that he was denied effective assistance of counsel.  Barsness bases this claim on three aspects of his trial counsel's performance: (1) trial counsel's failure to object to the above-discussed instances of alleged prosecutorial misconduct, (2) communication difficulties with trial counsel, and (3) trial counsel's failure to present certain evidence and call witnesses in his defense.

A defendant has the right to effective assistance of trial counsel, which we examine under a two-prong analysis.  *State v. Bobo*, 770 N.W.2d 129, 137 (Minn. 2009) (citing *Strickland v. Washington*, 446 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). Under the first prong, a defendant must show that counsel's performance was deficient, meaning it "fell below an objective standard of reasonableness."  *Id.* at 138 (quotation omitted).  Under the second prong, a defendant must show that the errors so prejudiced the defendant that a different outcome would have resulted but for the error.  *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

We reject Barsness's contention that trial counsel was ineffective for failing to object to the alleged prosecutorial misconduct.  As we discussed above, Barsness's substantial rights were not prejudiced by the plain error the prosecutor committed in asking one question.  If prosecutorial misconduct does not affect the outcome of a trial, then a defendant is not prejudiced by trial counsel's failure to object to the misconduct. *Dobbins*, 725 N.W.2d at 513.

To the extent that Barsness's claim of ineffective assistance of counsel relates to communication issues and evidence not presented, it cannot be determined on the record

before us. A postconviction hearing is necessary if the trial court record is insufficient to allow proper appellate review of these claims. *Voorhees v. State*, 627 N.W.2d 642, 649 (Minn. 2001). We therefore reject these aspects of Barsness's claim without prejudice to his right to attempt to develop and present this claim in postconviction proceedings. *See State v. Barnes*, 713 N.W.2d 325, 335 (Minn. 2006).

**Affirmed.**