*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0554**

State of Minnesota,
Respondent,

vs.

Robbin Alexander McNeil,
Appellant.

**Filed January 26, 2015
Affirmed
Johnson, Judge**

Becker County District Court
File No. 03-CR-12-2934

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul,
Minnesota; and

Gretchen Thilmony, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Mark D. Nyvold, Fridley, Minnesota, Bruce N. Ringstrom, Sr., Detroit Lakes, Minnesota
(for appellant)

Considered and decided by Johnson, Presiding Judge; Cleary, Chief Judge; and

Reyes, Judge.

**UNPUBLISHED OPINION**

**JOHNSON**, Judge

A Becker County jury found Robbin Alexander McNeil guilty of fifth-degree

possession of a controlled substance based on evidence that a state trooper found four

pounds of marijuana in a vehicle he was driving. We conclude that the district court did not err in its evidentiary rulings and that McNeil is not entitled to a new trial due to prosecutorial misconduct. Therefore, we affirm.

**FACTS**

McNeil's conviction arises from a traffic stop in Becker County in December 2012. Trooper Steve Jepson stopped McNeil for speeding. When Trooper Jepson approached McNeil's vehicle, he noticed an odor of burning marijuana. He asked McNeil to give him the marijuana. McNeil gave the trooper a small Tupperware container full of marijuana. While standing near the vehicle, Trooper Jepson saw a bong on the rear floorboard, directly behind the front passenger seat, and asked McNeil to give him the bong. McNeil reached over to the front floorboard and grabbed a different bong, which he handed to Trooper Jepson.

Trooper Jepson asked McNeil to exit the vehicle and told him that he intended to search the vehicle. McNeil told the trooper that he would find four pounds of marijuana in the vehicle. Indeed, Trooper Jepson found a black duffle bag in the vehicle that contained approximately four pounds of marijuana. Trooper Jepson arrested McNeil and, during the booking process, found approximately $4,000 of cash on his person. At the Becker County jail, Trooper Jepson placed the items seized from McNeil (the cash, the marijuana, and the bongs) on a table and photographed them.

The state charged McNeil with fifth-degree possession of a controlled substance, in violation of Minn. Stat. § 152.025, subd. 2(a)(1) (2014). The case was tried in March 2014. Trooper Jepson testified about the traffic stop and the items seized during the stop.

2

The state introduced into evidence a video-recording of the traffic stop and the photograph depicting the evidence seized from McNeil and his vehicle. McNeil testified in his own defense, with emphasis on his belief that the possession and use of marijuana should not be generally unlawful.

The jury found McNeil guilty. The district court imposed a sentence of 19 months and executed the sentence at McNeil's request. McNeil appeals.

## DECISION

### I. Right to Complete Defense

McNeil argues that the district court erred by sustaining some of the state's objections to his testimony, which he contends is a denial of his constitutional right to present a complete defense.

Before trial, the state filed a motion *in limine* to prevent McNeil's trial attorney from arguing for jury nullification. The district court ruled that defense counsel may not "suggest to the jurors that they can ignore the law." Nonetheless, the district court permitted McNeil to give a substantial amount of testimony that seems to challenge the law that makes marijuana a controlled substance. For example, McNeil testified that marijuana "can't be deadly," that other controlled substances are more dangerous than marijuana, and that he believes marijuana should not be a controlled substance. After one of the state's objections, the district court and counsel discussed the matter outside the presence of the jury. McNeil's attorney made an offer of proof that, if allowed, McNeil would continue his testimony by stating his belief that marijuana was improperly classified as a Schedule I controlled substance and by challenging certain findings of the

Federal Drug Administration regarding marijuana. The district court sustained the state's objection and explained, "the Court feels that what's being attempted here is to essentially ask the jury to decide this is an invalid law." But the district court ruled that McNeil could testify about "his personal opinion about whether or not something ought to be legal or illegal" even though it "may ultimately not be relevant." Thereafter, the state asserted additional objections whenever McNeil exceeded the scope of the district court's rulings, and the district court sustained most of the objections. For example, McNeil tried to offer testimony, over the state's objections, about certain scientific studies about the effects of marijuana, about fatality rates associated with the use of various controlled substances, and about the opinions of various physicians regarding marijuana use. McNeil also testified further that he has a medical-marijuana card and that he smokes marijuana to alleviate the symptoms of various physical ailments.

The Due Process Clause of the United States protects a criminal defendant's right to a meaningful opportunity to present a complete defense. *State v. Jenkins*, 782 N.W.2d 211, 225-26 (Minn. 2010). Specifically, an evidentiary rule that "infringes upon a weighty interest of the accused and is arbitrary or disproportionate to the purposes the rule is designed to serve" violates the defendant's constitutional right to present a complete defense. *State v. Pass*, 832 N.W.2d 836, 842 (Minn. 2013) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324-25, 126 S. Ct. 1727, 1731 (2006)) (alterations omitted). On the other hand, "evidentiary rules designed to permit the exclusion of unfairly prejudicial, confusing, or misleading evidence are unquestionably constitutional." *Id.* (quotations omitted). In other words, there is no constitutional right

4

to present irrelevant evidence. *See id.*; *see also State v. Woelfel*, 621 N.W.2d 767, 773 (Minn. App. 2001), *review denied* (Minn. Mar. 27, 2001). We apply an abuse-of-discretion standard of review. *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003).

In this case, the district court did not err by excluding McNeil's proffered testimony on the grounds that it had limited relevance in light of the offense charged. The state was required to prove that McNeil knowingly possessed marijuana. *See* Minn. Stat. § 152.025, subd. 2(a)(1). The state was not required to prove that the legislature acted wisely when it decided that possession of marijuana should be generally unlawful. In another case in which a defendant was charged with fifth-degree controlled substance crime, this court recently held that the district court did not err by excluding the defendant's proffered testimony that he holds a medical-marijuana card issued by the State of California. *State v. Thiel*, 846 N.W.2d 605, 614-15 (Minn. App. 2014), *review denied* (Minn. May 27, 2014). We explained that the proffered testimony "may have helped appellant to explain his conduct to a jury [but] would not have excused his conduct and it also would have served to confuse and mislead the jury." *Id.* at 615.

In this case, the district court allowed McNeil to give testimony that went far beyond the scope of what we approved in *Thiel*. McNeil testified that he has a medical-marijuana card and that he uses marijuana for medicinal purposes. And he also was allowed to express his personal opinions about the laws criminalizing marijuana. The most notable aspect of the district court's evidentiary rulings concerning McNeil's testimony is not what the district court excluded but what it permitted. Considering all relevant circumstances, McNeil cannot establish that the district court's rulings

5

"infringed upon a weighty interest of the accused" or applied a rule of law that is "arbitrary or disproportionate to the ends that the rule is designed to promote." *See Pass*, 832 N.W.2d at 842 (citation omitted).

Thus, the district court did not err by limiting McNeil's testimony and did not violate McNeil's constitutional right to present a complete defense.

## II.  Cash and Photograph

McNeil also argues that the district court erred by admitting evidence that the police found $4,000 in cash on McNeil's person and by admitting a photograph that depicts the marijuana, cash, and bongs that Trooper Jepson seized from McNeil's person and his vehicle.  McNeil contends that this evidence is irrelevant and is unfairly prejudicial because it tended to portray McNeil as a "drug dealer."

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Minn. R. Evid. 401.  With some exceptions, "[a]ll relevant evidence is admissible," and "[e]vidence which is not relevant is not admissible."  Minn. R. Evid. 402.  Furthermore, relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Minn. R. Evid. 403.  "Photographs are admissible if they accurately portray anything that a witness may describe in words, or the photographs are helpful as an aid to an oral description of objects and conditions, provided they are relevant to some material issue."  *State v.*

6

*Morton*, 701 N.W.2d 225, 237 (Minn. 2005). This court applies an abuse-of-discretion standard of review to a district court's weighing of relevance and undue prejudice. *State v. Morrow*, 834 N.W.2d 715, 726 (Minn. 2013).

McNeil first challenged the state's evidence concerning the cash in a motion *in limine*. The district court denied the motion on the ground that the money was "relevant to the issue of whether or not he knowingly possessed the items." McNeil also objected when Trooper Jepson was on the witness stand, and the district court overruled the objection. In allowing the trooper's testimony, the district court expressly identified the relevance of the evidence, namely, that the evidence tends to prove that McNeil knowingly possessed the marijuana that was discovered in his vehicle. The district court also expressed awareness of the potential for undue prejudice arising from the possible inference that McNeil possessed the marijuana with intent to sell. The district court conducted a deliberate and thoughtful balancing of these considerations and concluded that the evidence should be admitted. We conclude that the district court acted within its discretion by admitting the testimony about the cash.

McNeil also challenged the photograph in a motion *in limine*. The district court denied the motion on the ground that the photograph was relevant and not unduly prejudicial. The district court reasoned that the presence of a bong tends to prove knowing possession of marijuana because a jury could infer that "the reason to have a bong would be because you may have some marijuana you intend to smoke." The district court also explained that the photograph was helpful because it would help the jury understand the items that were seized from McNeil's person and his vehicle. The district

7

court acknowledged that the photograph was "staged" but noted that the state would be required to establish a foundation for the photograph. McNeil also objected to the photograph when it was offered through Trooper Jepson's testimony, and the district court overruled the objection.

In allowing the trooper's testimony, the district court expressly identified the relevance of the evidence. The district court also expressed awareness of the requirement for foundational testimony. Although photographic exhibits of tangible evidence should be used with caution, *see, e.g.*, *State v. Friend*, 493 N.W.2d 540, 544 (Minn. 1992), we agree with the district court that the photograph in this case had a relatively small potential for undue prejudice. Jurors were unlikely to be misled by the photograph because they heard Trooper Jepson's testimony about the traffic stop and about the taking of the photograph. Furthermore, the potential prejudice was lessened by the fact that the jury already had received other evidence about all the items shown in the photograph. *See VanHercke v. Eastvold*, 405 N.W.2d 902, 906 (Minn. App. 1987). We also are mindful of the fact that the district court's evidentiary rulings were permissive toward both parties throughout the trial. For these reasons, we conclude that the district court acted within its discretion by admitting the photograph.

Thus, the district court did not err by admitting evidence of the cash and admitting the photograph.

### III.  Prosecutorial Misconduct

McNeil next argues that the prosecutor engaged in misconduct in two ways: first, by questioning McNeil about the potential criminal penalties that might apply to him and, second, by misstating the presumption of innocence during closing argument.

### A.  Potential Penalties

During his direct examination, McNeil gave the following testimony in the form of a question: "If marijuana has never killed anybody, why am I going to prison for it?" The district court sustained the state's objection, though the testimony was not stricken from the record.  During cross-examination, the prosecutor asked McNeil whether he was aware of the Minnesota Sentencing Guidelines and whether he would "acknowledge that . . . if the jury were to convict you of this offense, you wouldn't be going to prison under the Minnesota Sentencing Guidelines?"  McNeil answered this question by stating, "I don't know how I wouldn't go to prison," in light of mandatory minimum sentences. McNeil's trial counsel did not object.  On appeal, McNeil contends that the prosecutor engaged in misconduct by asking the question because evidence of potential criminal penalties generally is inadmissible.  *See State v. Grose*, 387 N.W.2d 182, 188 (Minn. App. 1986), *review dismissed* (Minn. Jan. 16, 1987).  Because McNeil's trial counsel did not object, the plain-error test applies.  *See* Minn. R. Crim. P. 31.02; *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).

Despite the general rule that evidence of potential criminal penalties is inadmissible, such evidence may be admissible if a party "opens the door" to the evidence.  *See State v. Valtierra*, 718 N.W.2d 425, 436 (Minn. 2006).  "Opening the door

occurs when one party, by introducing certain material, creates in the opponent a right to respond with material that would otherwise have been inadmissible." *Id.* (internal quotations omitted). The rationale of the doctrine is that "one party should not have an unfair advantage" by offering testimony on a particular subject without giving the other party an opportunity to respond. *Id.* (quotation omitted).

In this case, McNeil opened the door to the subject of potential criminal penalties by giving testimony on the subject and, more specifically, wrongly suggesting that he must go to prison if the jury were to find him guilty. In addition, the district court instructed the jury "not to consider any possible penalties that might attach in this case regarding any decision that you make." Thus, the prosecutor did not engage in misconduct by questioning McNeil on the subject of criminal penalties for the purpose of rebutting his earlier testimony.

## B.    Presumption of Innocence

During his closing argument, the prosecutor stated that McNeil was presumed innocent "up until the point when I call my first witness and the second witness and the point when the defendant testified." McNeil's trial counsel objected, and the district court sustained the objection. The prosecutor then restated his argument as follows: "The defendant is presumed innocent throughout this trial. I would submit to you that the evidence introduced in this case has overcome that presumption."

On appeal, McNeil contends that the prosecutor engaged in misconduct by misstating the presumption of innocence. In general, a prosecutor engages in misconduct by incorrectly characterizing the presumption of innocence. *State v. Salitros*, 499

10

N.W.2d 815, 818 (Minn. 1993). If a defendant has preserved an objection at trial, this court applies a harmless-error test to a prosecutorial-misconduct argument that "varies based on the severity of the misconduct." *State v. Wren*, 738 N.W.2d 378, 389-90 (Minn. 2007) (citing *State v. Ramey*, 721 N.W.2d 294, 299 n.4 (2006)). The supreme court has set forth a two-tiered test:

> [I]n cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. . . . On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*Id.* at 390 n.8 (quoting *State v. Caron*, 300 Minn. 123, 127-28, 218 N.W.2d 197, 200 (1974)); *see also State v. McCray*, 753 N.W.2d 746, 754 n.2 (Minn. 2008) ("leav[ing] . . . for another day" the question whether the two-tiered approach should continue to apply). McNeil's argument implicates the lower standard for less-serious misconduct. *See State v. Trimble*, 371 N.W.2d 921, 926-27 (Minn. App. 1985), *review denied* (Minn. Oct. 11, 1985); *see also State v. Carradine*, 812 N.W.2d 130, 148 (Minn. 2012).

In this case, the prosecutor quickly acknowledged his misstatement and corrected himself by accurately stating that the presumption of innocence lasts throughout the entire trial. The jury likely understood that the prosecutor had made a mistake and, thus, had not made a statement on which they should rely when deciding whether McNeil is guilty or not guilty. Furthermore, the district court accurately stated the presumption of innocence when giving instructions to the jury, both before and after the presentation of

11

evidence. *See Trimble*, 371 N.W.2d at 926-27. Moreover, there was overwhelming evidence that McNeil possessed marijuana, including his own testimony, which essentially admitted his possession but attempted to justify it. Thus, the prosecutor's misstatement is harmless because it likely did not play a substantial part in influencing the jury's decision.

## IV. Cumulative Error

McNeil last argues, in the alternative, that even if none of the three issues raised on appeal independently requires a new trial, the cumulative effect of the district court's asserted errors requires a new trial. If an appellant establishes that a district court committed two or more procedural errors, none of which individually requires a new trial, the appellant nonetheless may be entitled to a new trial "if the errors, when taken cumulatively, had the effect of denying appellant a fair trial." *State v. Jackson*, 714 N.W.2d 681, 698 (Minn. 2006) (quotation omitted). We have concluded, however, that the district court did not commit a single error, let alone multiple errors. Accordingly, the cumulative-error doctrine does not apply.

**Affirmed.**